# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

———————————

CANNA PROVISIONS, INC.; GYASI SELLERS; WISEACRE FARM, INC.; VERANO HOLDINGS CORP.,

Plaintiffs-Appellants,

v.

MERRICK B. GARLAND,
Attorney General,

Defendant-Appellee.

———————————

On Appeal from the United States District Court
for the District of Massachusetts, No. 23-30113

———————————

## BRIEF FOR THE APPELLEE ATTORNEY GENERAL
———————————

BRIAN M. BOYNTON
   *Principal Deputy Assistant
   Attorney General*

MARK B. STERN
SARAH CARROLL
DANIEL AGUILAR
   *Attorneys, Appellate Staff
   Civil Division, Room 7266
   U.S. Department of Justice
   950 Pennsylvania Avenue NW
   Washington, DC 20530
   (202) 514-5432*

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION.................................................................1

STATEMENT OF THE ISSUES...................................................................1

STATEMENT OF THE CASE ......................................................................2

I.  Statutory and Regulatory Framework .................................................. 2

II.  Prior Proceedings................................................................................. 6

SUMMARY OF ARGUMENT ...................................................................... 9

STANDARD OF REVIEW ........................................................................... 11

ARGUMENT................................................................................................ 11

I.  Congress May Constitutionally Regulate the Interstate and Intrastate Markets for Controlled Substances ............................ 11

II.  Plaintiffs Have Not Demonstrated A Substantive Due Process Right To Grow, Transport, and Sell Marijuana ................................. 29

CONCLUSION............................................................................................ 35

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                               **Page(s)**

*Abigail Alliance for Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695 (D.C. Cir. 2007) ................................... 33

*Austin v. Tennessee,*
179 U.S. 343 (1900) .................................................................. 34

*Borges v. County of Mendocino,*
2023 WL 2363692 (9th Cir. Mar. 6, 2023) ............................ 32

*Bosse v. Oklahoma,*
580 U.S. 1 (2016) ..................................................................... 20

*Califano v. Torres,*
435 U.S. 1 (1978) (per curiam) ............................................. 22

*Collins v. City of Harker Heights,*
503 U.S. 115 (1992) ................................................................. 31

*Craker v. U.S. Drug Enforcement Administration,*
44 F.4th 48 (1st Cir. 2022) ...................................................... 6

*Department of State v. Muñoz,*
144 S. Ct. 1812 (2024) .............................................. 30, 31, 34

*DeShaney v. Winnebago County Department of Social Services,*
489 U.S. 189 (1989) ................................................................. 31

*District Attorney's Office for Third Judicial District v. Osborne,*
557 U.S. 52 (2009) ................................................................... 30

*District of Columbia v. Heller,*
554 U.S. 570 (2008) ................................................................. 19

*Elgin v. U.S. Department of Treasury,*
641 F.3d 6 (1st Cir. 2011) ....................................................... 22

*Fejes v. FAA,*
98 F.4th 1156 (9th Cir. 2024) ................................................. 27

*Frese v. Formella*,
53 F.4th 1 (1st Cir. 2022) ......................................................... 20

*Frith v. Whole Foods Market, Inc.*,
38 F.4th 263 (1st Cir. 2022) ..................................................... 11

*Gibbons v. Ogden*,
22 U.S. 1 (1824) ........................................................................ 28

*Gonzales v. Raich*,
545 U.S. 1 (2005) ......... 2, 3, 4, 8, 9, 12, 13, 14, 15, 16, 17, 18, 19, 23, 24, 27

*Harris v. Rosario*,
446 U.S. 651 (1980) (per curiam) ........................................... 22

*Hodel v. Virginia Surface Mining and Reclamation Association, Inc.*,
452 U.S. 264 (1981) .................................................................. 12

*Leary v. United States*,
395 U.S. 6 (1969) ....................................................................... 3

*Melanson v. United States*,
256 F. 783 (5th Cir. 1919) ......................................................... 2

*Monson v. Drug Enforcement Administration*,
589 F.3d 952 (8th Cir. 2009) .................................................. 25

*National Coalition for Men v. Selective Service System*,
969 F.3d 546 (5th Cir. 2020) (per curiam) .................... 20, 21, 22

*Northeast Patients Group v. United Cannabis Patients and Caregivers of Maine*,
45 F.4th 542 (1st Cir. 2022) ..................................................... 26

*Raich v. Gonzales*,
500 F.3d 850 (9th Cir. 2007) .............................................. 8, 32

*Reno v. Flores*,
507 U.S. 292 (1993) .................................................................. 31

*Rodriguez de Quijas v. Shearson/American Express, Inc.*,
490 U.S. 477 (1989) .................................................................... 9

*Rostker v. Goldberg,*
    453 U.S. 57 (1981) ................................................................ 21

*State Oil Co. v. Khan,*
    522 U.S. 3 (1997) ........................................................... 21, 22

*Taylor v. United States,*
    579 U.S. 301 (2016) .............................................................. 18

*Timbs v. Indiana,*
    586 U.S. 146 (2019) .............................................................. 30

*United States v. Amalfi,*
    47 F.4th 114 (2d Cir. 2022) ................................................. 25

*United States v. Ayala-Alas,*
    2024 WL 3357858 (5th Cir. July 10, 2024) ......................... 27

*United States v. Bilodeau,*
    24 F.4th 705 (1st Cir. 2022) ............................................ 24, 27

*United States v. Cannon,*
    36 F.4th 496 (3d Cir. 2022) (per curiam) ......................... 32-33

*United States v. Francis,*
    77 F.4th 66 (2d Cir. 2023) ................................................... 25

*United States v. Freno,*
    2024 WL 3199972 (8th Cir. June 27, 2024) ......................... 27

*United States v. Fry,*
    787 F.2d 903 (4th Cir. 1986) ............................................... 34

*United States v. Ivery,*
    427 F.3d 69 (1st Cir. 2005) ................................................. 20

*United States v. Langley,*
    17 F.4th 1273 (9th Cir. 2021) .............................................. 32

*United States v. Lopez,*
    514 U.S. 549 (1995) .............................................................. 16

*United States v. Marin,*
    2024 WL 3565819 (4th Cir. July 29, 2024) ......................... 27

*United States v. Maupin*,
  3 F.4th 1009 (8th Cir. 2021) ............................................................ 25-26

*United States v. Maxwell*,
  446 F.3d 1210 (11th Cir. 2006) ................................................................. 19

*United States v. Morosco*,
  822 F.3d 1 (1st Cir. 2016) ......................................................................... 20

*United States v. Morrison*,
  529 U.S. 598 (2000) ................................................................................. 16

*United States v. Nascimento*,
  491 F.3d 25, (1st Cir. 2007) ........................................................ 18, 19, 25

*United States v. Pennington*,
  2024 WL 4249937 (11th Cir. Sept. 20, 2024) ......................................... 27

*United States v. Prater*,
  2024 WL 3634526 (6th Cir. Aug. 2, 2024) .............................................. 27

*United States v. Rivera-Medina*,
  2024 WL 3064944 (1st Cir. June 20, 2024) ............................................ 27

*United States v. Stewart*,
  451 F.3d 1071 (9th Cir. 2006) ................................................................. 19

*United States v. Vaello Madero*,
  596 U.S. 159 (2022) ........................................................................... 22, 23

*United States v. Vaello-Madero*,
  956 F.3d 12 (1st Cir. 2020) ..................................................................... 23

*United States v. White Plume*,
  447 F.3d 1067 (8th Cir. 2006) ................................................................. 34

*United States v. Wrightwood Dairy Co.*,
  315 U.S. 110 (1942) ................................................................................. 29

*Washington v. Glucksberg*,
  521 U.S. 702 (1997) ....................................................................... 30, 31, 32

*Wickard v. Filburn*,
  317 U.S. 111 (1942) ................................................................................. 14

## Constitution and Statutes:

U.S. Const. art. I, § 8 ................................................................ 16

Consolidated Appropriations Act, 2002,
    Pub. L. No. 117-103, division B, title V, § 531, 136 Stat. 49 ............... 23-24

Controlled Substances Act,
    Pub. L. No. 91-513, title II, part A, 84 Stat. 1236, 1242 (1970) ................. 3

Federal Cigarette Labeling and Advertising Act,
    Pub. L. No. 89-92, 79 Stat. 282 (1965) .................................... 35

Harrison Narcotic Drug Act,
    Pub. L. No. 63-223, 38 Stat. 785 (1914) .................................... 2

Marihuana Tax Act of 1937,
    Pub. L. No. 75-238, 50 Stat. 551 ........................................ 2-3

Pure Food and Drugs Act of 1906,
    Pub. L. No. 59-384, 34 Stat. 768 .......................................... 2

21 U.S.C. § 801 ................................................................ 3, 8

21 U.S.C. §§ 811, 812 .......................................................... 4

21 U.S.C. § 812(a)-(b) .......................................................... 4

21 U.S.C. § 812(b)(3) ........................................................... 5

21 U.S.C. § 822 .............................................................. 5, 28

21 U.S.C. § 823(a), (e) .......................................................... 6

21 U.S.C. § 823(c) ............................................................. 6

21 U.S.C. §§ 823(e)-(f), 824(a) ................................................. 28

21 U.S.C. § 824(a)(4) .......................................................... 6

21 U.S.C. § 825(c)-(d) .......................................................... 5

21 U.S.C. § 826 ............................................................... 28

21 U.S.C. § 827(a)-(b) .......................................................... 5

21 U.S.C. § 832 ................................................................ 28

21 U.S.C. § 832(a)(3) ........................................................ 5

21 U.S.C. § 841(a)(1) ........................................................ 5

21 U.S.C. §§ 841(a)(1), 844(a) ........................................ 4

21 U.S.C. § 841(b)(1)(A)(vii) ........................................... 6

21 U.S.C. § 841(b)(1)(E)(i) ............................................. 28

21 U.S.C. § 844(a) ........................................................... 28

28 U.S.C. § 1291 ............................................................... 1

28 U.S.C. §§ 1331, 2201(a) .............................................. 1

## Rules and Regulations:

85 Fed. Reg. 82333 (Dec. 18, 2020) ............................... 6

89 Fed. Reg. 44597 (May 21, 2024) ................................ 4

89 Fed. Reg. 70148 (Aug. 29, 2024) ............................... 5

21 C.F.R. § 1308.13(c)(7), (e)(1)(ii) ................................ 28

21 C.F.R. § 1308.13(c)(7), (e)(1)(ii), (f)(84) .................... 5

## Other:

Regulations.gov,
  *Schedules of Controlled Substances: Rescheduling of Marijuana*,
  https://perma.cc/6JEE-TNYJ (May 20, 2024)......................... 5

Resp. Br., *Ashcroft v. Raich*, No. 03-1454,
  2004 WL 2308766 (U.S. Oct. 13, 2004) ................................ 13

Office of the Deputy Attorney General,
  *Guidance Regarding Marijuana Enforcement* (Aug. 29, 2013) ............ 27

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. §§ 1331 and 2201(a). A24, ¶ 29.[1] On July 2, 2024, the district court entered judgment dismissing the complaint for failure to state a claim. A141. Plaintiffs filed a timely notice of appeal the next day. A142; Fed. R. App. P. 4(a)(1)(B)(iii). This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Plaintiffs challenge the constitutionality of the Controlled Substances Act "as-applied to the cultivation, possession, and distribution of state-regulated marijuana." Br. 15. They seek declaratory and injunctive relief to bar the Attorney General from enforcing the Controlled Substances Act in any "manner that interferes with the intrastate cultivation, manufacture, possession, and distribution of marijuana, pursuant to state law." A53. They also urge that they have a substantive due process right to cultivate, manufacture, possess, and distribute marijuana. A52-53.

The issues presented are:

**1.** Whether Congress lacks constitutional authority to regulate the interstate and intrastate markets for cultivating, manufacturing,

_____

[1] "A" citations refer to the Joint Appendix, and "Add." citations refer to the addendum to plaintiff's opening brief.

possessing, and distributing marijuana.

**2.** Whether plaintiffs have a substantive due process right to cultivate, manufacture, possess, and distribute marijuana.

## STATEMENT OF THE CASE

### I.  Statutory and Regulatory Framework

**1.**  For more than a century, Congress has "regulate[d] the national market in drugs," and since 1906 has "prohibit[ed] the manufacture or shipment of any adulterated or misbranded drug traveling in interstate commerce." *Gonzales v. Raich*, 545 U.S. 1, 10 (2005); *see* Pure Food and Drugs Act of 1906, Pub. L. No. 59-384, 34 Stat. 768, 768.  Congress soon thereafter passed the Harrison Narcotic Drug Act, Pub. L. No. 63-223, 38 Stat. 785, 785-86 (1914), which prohibited any person from producing, importing, or dispensing opium and cocoa leaves (and their derivatives) unless they had registered with the Treasury Department and paid a tax. That Act further prohibited physicians from prescribing heroin and cocaine in amounts "that would not be issued by a physician in the course of his professional practice."  *Melanson v. United States*, 256 F. 783, 787 (5th Cir. 1919).

Consistent with this scheme of regulating controlled substances, Congress passed the Marihuana Tax Act of 1937, Pub. L. No. 75-238, 50

Stat. 551, which imposed "onerous administrative requirements" that "practically curtailed the marijuana trade," *Raich*, 545 U.S. at 11. The Act required all people who "deal in" marijuana[2] to register with the government and pay a nominal tax. *Leary v. United States*, 395 U.S. 6, 14 (1969). The Act required that all transfers of marijuana between people must be pursuant to a written order form, and transfers of marijuana to registered persons were taxed at $1 per ounce, while transfers to unregistered persons were taxed at $100 per ounce. *Id.* at 14-15. The Act prohibited anyone from acquiring marijuana without paying the applicable tax and producing on demand the applicable written order form. *Id.* at 15.

**2.** Congress substantially overhauled the regulatory regime for marijuana and other drugs by enacting the Controlled Substances Act in 1970. Pub. L. No. 91-513, title II, part A, 84 Stat. 1236, 1242 (1970) (codified at 21 U.S.C. § 801 *et seq.*). The Act "consolidate[d] various drug laws on the books into a comprehensive statute" that would establish regulation for "legitimate sources of drugs" and "prevent diversion into illegal channels." *Raich*, 545 U.S. at 10. To that end, Congress "devised a closed regulatory system making it unlawful to manufacture, distribute,

_____

[2] Older statutes and precedents refer to "marihuana," while newer authorities use the spelling "marijuana." This brief adopts the newer spelling.

dispense, or possess any controlled substance except in a manner authorized by" the Controlled Substances Act. *Id.* at 13 (citing 21 U.S.C. §§ 841(a)(1), 844(a)).

The Act divides controlled substances into five schedules "based on their accepted medical uses, the potential for abuse, and their psychological and physical effects on the body." *Raich*, 545 U.S. at 13-14 (citing 21 U.S.C. §§ 811, 812). Generally speaking, a Schedule I substance has no accepted medical use and a high risk for abuse, while Schedule II-V substances have accepted medical uses and decreasing risks of abuse and dependence. 21 U.S.C. § 812(a)-(b).

Congress initially designated scores of substances under the schedules—including marijuana—and authorized the Attorney General to add, remove, or reschedule substances through rulemaking. 21 U.S.C. §§ 811(a), 812(c), sch. I (c)(10). In May 2024, the Attorney General issued a notice of proposed rulemaking that contemplates transferring marijuana from Schedule I to Schedule III. 89 Fed. Reg. 44597, 44597 (May 21, 2024). As a Schedule III substance, marijuana would be determined to have a "currently accepted medical use in treatment in the United States," with a lower potential for abuse than Schedule I and II drugs, while still potentially leading "to moderate or low physical dependence or high

psychological dependence." 21 U.S.C. § 812(b)(3). Other Schedule III

drugs include ketamine, testosterone, and medicines with up to 1.8 grams

of codeine per 100 milliliters. 21 C.F.R. § 1308.13(c)(7), (e)(1)(ii), (f)(84).

The Department of Justice has received 43,564 comments in response to

that proposal, *see* Regulations.gov, *Schedules of Controlled Substances:*

*Rescheduling of Marijuana*, https://perma.cc/6JEE-TNYJ (May 20, 2024),

and a hearing has been set for December 2024, 89 Fed. Reg. 70148, 70148-

49 (Aug. 29, 2024).

The Controlled Substances Act imposes regulatory requirements for

Schedule III drugs as well as Schedule I drugs, including the requirement

that everyone who manufactures, distributes, or dispenses "any controlled

substance" must obtain a registration issued by the Attorney General. 21

U.S.C. § 822.[3] Congress prohibited anyone from knowingly manufacturing,

distributing, and dispensing any controlled substances except as authorized

by the Controlled Substances Act, *id.* § 841(a)(1), including specific

---

[3] The Act sets forth a number of other requirements, such as how all
controlled substances must be labelled and packaged, 21 U.S.C. § 825(c)-
(d), how registrants must keep and maintain records of their controlled
substances inventory, *id.* § 827(a)-(b), and how registrants must inform the
government if they discover "a suspicious order or series of orders" for
controlled substances, *id.* § 832(a)(3).

prohibitions concerning unlawful manufacture or distribution of marijuana, *id.* § 841(b)(1)(A)(vii), (b)(1)(B)(vii), (b)(1)(D), (b)(4).

The statute sets forth various requirements that must be satisfied to obtain a registration "[]consistent with the public interest," 21 U.S.C. § 823(a), (e), and the Attorney General may suspend or revoke a registration if the person "has committed such acts as would render his registration * * * inconsistent with the public interest," *id.* § 824(a)(4).  One way to obtain a registration is to apply for authority to manufacture marijuana for medical and scientific research.  *Id.* § 823(c).  Pursuant to that authority, the Department of Justice has registered a number of applicants who seek to "lawfully manufacture and cultivate cannabis for research purposes," *Craker v. U.S. Drug Enforcement Administration*, 44 F.4th 48, 52, 55 (1st Cir. 2022), and the Department "fully support[s] research into * * * the potential medical utility" of marijuana, 85 Fed. Reg. 82333, 82335 (Dec. 18, 2020).

## II.   Prior Proceedings

Plaintiff Canna Provisions is a corporation that operates two stores for selling recreational marijuana in Massachusetts.  A25, ¶ 32.  The other plaintiffs are Wiseacre Farm, Inc., which grows marijuana in Massachusetts (A29, ¶¶ 42-43); Gyasi Sellers, who distributes marijuana (A27, ¶¶ 37-38);

and Verano Holdings, a Canadian corporation that owns Massachusetts subsidiaries that grow, process, and sell medical and recreational marijuana (A30, ¶¶ 45). Plaintiffs do not allege that they have registered with the Attorney General under the Controlled Substances Act, or that they are following its various requirements.

Plaintiffs sued the Attorney General, asserting that "Congress has authority to ban marijuana from *interstate* commerce, [but] it has no general police power over marijuana grown, transported, and distributed in *intrastate* commerce." A20, ¶ 18. Plaintiffs claim that the Controlled Substances Act "as applied to Plaintiffs' intrastate cultivation, manufacture, possession, and distribution of marijuana pursuant to state law" is "outside Congress's authority under Article I of the Constitution." A52, ¶ 106. The complaint further alleges that the regulation of "marijuana in states where it is otherwise legal" deprives plaintiffs of substantive due process. A52-53, ¶¶ 113-14. Plaintiffs sought a permanent injunction that would bar the Attorney General "from enforcing the [Controlled Substances Act]" in any "manner that interferes with the intrastate cultivation, manufacture, possession, and distribution of marijuana, pursuant to state law," and similar declaratory relief. A53.

The district court dismissed the complaint for failure to state a claim. Add. 15. The court explained that "[a]lmost twenty years ago, the Supreme Court declined to find that the reach of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, exceeded the bounds of federal authority when applied to noncommercial, wholly-intrastate activities involving small-scale cultivation and possession of marijuana for personal medical use. *Gonzales v. Raich*, 545 U.S. 1 (2005)." Add. 1. The district court thus held that under that "binding Supreme Court precedent," Add. 2, "Congress has authority under the Commerce Clause to regulate" plaintiffs' "marijuana activities," observing that "only the Supreme Court can overrule *Raich*." Add. 14.

The court also dismissed plaintiffs' substantive due process claim, finding persuasive the Ninth Circuit's decision on remand in *Raich v. Gonzales*, 500 F.3d 850, 866 (9th Cir. 2007), which likewise rejected a due process claim to marijuana use. Add. 14. The district court explained that although "more states have since legalized marijuana" since *Raich*, "there is still no national consensus," and that "legalization alone neither requires nor permits this court to recognize a fundamental right to engage in such conduct." Add. 14.

## SUMMARY OF ARGUMENT

**I.** Plaintiffs "challenge the constitutionality of the" Controlled Substances Act "as-applied to the cultivation, possession, and distribution of state-regulated marijuana." Br. 15. In their view, Congress' Commerce Clause authority would vary from state to state depending on the judgments of individual legislatures. Plaintiffs cite no authority for reasoning of this kind, which disregards the interstate nature of the marijuana market and the extent to which their proposed constitutional limitations would undermine the operation of the Controlled Substances Act.

Their brief focuses on *Gonzales v. Raich*, 545 U.S. 1 (2007), in which the Supreme Court upheld the application of the Controlled Substances Act to the intrastate possession of homegrown marijuana that would never enter the market. Plaintiffs urge that this Court should declare that *Raich* is no longer good law, an argument that is incorrect on its own terms and which improperly invites the Court to depart from the rule that a court "should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989).

In any event, plaintiffs' position would be without basis if *Raich* had never been decided. It has long been established that Congress may regulate intrastate commercial conduct as part of a larger national scheme, and it was therefore undisputed in *Raich* that Congress could regulate the intrastate market for marijuana. The only question was whether that authority extended to possession of marijuana that was not obtained on the market and would not be sold on the market. It was clear even before *Raich* that the position plaintiffs advance here is without merit.

The Department of Justice has proposed that marijuana be transferred from Schedule I of the Controlled Substances Act to Schedule III. But plaintiffs' Commerce Clause theory would preclude the United States from applying the Controlled Substances Act's Schedule III requirements as long as a marijuana producer complies with the laws of the state in which it is located—a novel and erroneous theory of reverse preemption.

**II.** Plaintiffs also assert, under substantive due process principles, a fundamental right to grow and sell marijuana free from federal—but not state—regulation. Plaintiffs identify no fundamental right that can be violated by states but not by the federal government. Nor do they offer any plausible ground for the assertion that there is a fundamental right to grow

and sell marijuana.  The Supreme Court has only rarely recognized a fundamental right grounded in substantive due process, and the production and sale of marijuana resemble none of those instances.

**STANDARD OF REVIEW**

"We review de novo the district court's dismissal of a suit for failure to state a claim."  *Frith v. Whole Foods Market, Inc.*, 38 F.4th 263, 269 (1st Cir. 2022).

**ARGUMENT**

**I.    Congress May Constitutionally Regulate the Interstate and Intrastate Markets for Controlled Substances**

Plaintiffs declare that they "challenge the constitutionality of the CSA as-applied to the cultivation, possession, and distribution of state-regulated marijuana."  Br. 15.  By this, plaintiffs apparently mean that Congress lacks Commerce Clause authority to regulate the possession, production and sale of marijuana that conform to a State's laws.  It is not clear whether plaintiffs believe that the Controlled Substances Act could be applied to non-conforming conduct in a State that regulated marijuana in some fashion or whether the federal government lacks constitutional authority in states that have regulated marijuana by banning it.

In all events, plaintiffs offer no support for their constitutional theory, which turns Commerce Clause analysis on its head.  "[I]t is clear that the

Commerce Clause empowers Congress to prohibit all—and not just inconsistent—state regulation of" "private activity affecting interstate commerce." *Hodel v. Virginia Surface Mining and Reclamation Association, Inc.*, 452 U.S. 264, 290 (1981). And consistent with that authority Congress may still choose "to allow the States a regulatory role" consistent with the federal scheme. *Id.* But the Supreme Court has never suggested that states can remove Congress' Commerce Clause authority by enacting their own regulatory provisions.

Disregarding the fundamental problem with their argument, plaintiffs take the unlikely tack of asking this Court to declare that *Gonzales v. Raich*, 545 U.S. 1 (2005), is no longer good law. That tactic fails for several reasons. It improperly invites this Court to set aside Supreme Court precedent. The outcome here would be the same if *Raich* had never been decided. And intervening events do not cast doubt on the vitality of the Supreme Court's decision.

**A.** In *Raich*, the Supreme Court held that Congress has "the power to prohibit the local cultivation and use of marijuana," even if those activities were "in compliance with California law." 545 U.S. at 5.

The plaintiffs in *Raich* "suffer[ed] from a variety of serious medical conditions" and their doctors concluded "that marijuana is the only drug

available that provides effective treatment." *Raich*, 545 U.S. at 6-7.

Consistent with California's medical marijuana law, plaintiffs grew their

own marijuana or obtained marijuana that had been locally grown. *Id.* at 7.

After federal agents seized several of their marijuana plants, plaintiffs sued

"seeking injunctive and declaratory relief" against the Attorney General. *Id.*

Plaintiffs argued that the Controlled Substances Act was unconstitutional

under the Commerce Clause "to the extent it prevents them from

possessing, obtaining, or manufacturing cannabis for their personal

medical use." *Id.* at 7-8. Plaintiffs moved for a preliminary injunction that

the district court denied, but the Ninth Circuit reversed, holding that

Congress could not regulate "the intrastate, noncommercial cultivation and

possession of cannabis for personal medical purposes as recommended by a

patient's physician pursuant to valid California state law." *Id.* at 8-9.

The Supreme Court vacated that judgment, holding that under

"[w]ell-settled law * * * [t]he [Controlled Substances Act] is a valid exercise

of federal power." *Raich*, 545 U.S. at 9. The Court rejected plaintiffs'

assertion that their marijuana (which was homegrown or locally-obtained

for free), *id.* at 7, was "detached from any market" and would not "compete

in the marketplace with, or enter into, interstate commerce," Resp. Br. 16,

*Ashcroft v. Raich*, No. 03-1454, 2004 WL 2308766 (U.S. Oct. 13, 2004).

Instead, the Court explained that its precedent "firmly establishes Congress' power to regulate purely local activities that are part of an economic class of activities that have a substantial effect on interstate commerce." *Raich*, 545 U.S. at 17 (quotation markets omitted).

*Raich* thus relied on principles discussed in *Wickard v. Filburn*, 317 U.S. 111 (1942), which upheld restrictions on wheat production designed to avoid surpluses and price decreases.  A farmer produced more wheat than had been allotted, and he argued that Congress lacked constitutional authority to regulate this excess wheat that was "not intended in any part for commerce but wholly for consumption on the farm." *Raich*, 545 U.S. at 18 (quoting *Wickard,* 317 U.S. at 118).  But, "[a]s we stated in *Wickard*, 'even if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce.'" *Raich*, 545 U.S. at 17 (quoting *Wickard*, 317 U.S. at 125).

Here, the Controlled Substances Act sought "to control the supply and demand of controlled substances in both lawful and unlawful drug markets." *Raich*, 545 U.S. at 19.  That regulatory authority—including a general prohibition on Schedule I substances including marijuana—"is squarely within Congress' commerce power." *Id.*  Even intrastate

production of a commodity "meant for home consumption, be it wheat or marijuana, has a substantial effect on supply and demand in the national market for that commodity." *Id.*

*Raich* noted that unlike the regulation of "a lawful market" which Congress may seek to "protect and stabilize," Congress here "sought to eradicate" the unlawful market for marijuana. *Raich*, 545 U.S. at 19 n.29. But the Court held that this distinction was "of no constitutional import," and Congress' authority under the Commerce Clause is broad enough to encompass "prohibitions," "restrictions," and "stimulation[s]" of commerce. *Id.* at 19-20 n.29. The *Raich* plaintiffs resisted that conclusion, noting that Congress did not make any findings that "the intrastate cultivation and possession of marijuana for medical purposes * * * would substantially affect the larger interstate marijuana market." *Id.* at 21. But the Court explained that "the absence of particularized findings does not call into question Congress' authority to legislate." *Id.* Instead, the Court's task was "a modest one"—it must determine whether there was any "rational basis" for concluding that the plaintiffs' "activities, taken in the aggregate," could "substantially affect interstate commerce." *Id.* at 22.

The Supreme Court definitively answered that question affirmatively, holding that "Congress was acting well within its authority to 'make all

Laws which shall be necessary and proper' to 'regulate Commerce * * * among the several States.'" *Raich*, 545 U.S. at 22 (quoting U.S. Const. art. I, § 8).  Unlike the Gun-Free School Zones Act in *United States v. Lopez*, 514 U.S. 549 (1995), and the Violence Against Women Act in *United States v. Morrison*, 529 U.S. 598 (2000), the Controlled Substances Act "directly regulates economic commercial activity" by regulating "the production, distribution, and consumption of commodities for which there is an established, and lucrative, interstate market." *Raich*, 545 U.S. at 26.

Based on that same reasoning, the *Raich* majority rejected the argument that the plaintiffs' growth of marijuana for personal use was "beyond the outer limits of Congress' Commerce Clause authority."  545 U.S. at 28 (quotation marks omitted).  If that logic were accepted, then the "personal use of marijuana (or any other homegrown drug) for recreational purposes" would "also [be] beyond those outer limits, whether or not a State elects to authorize or even regulate such use." *Id.* (quotation marks omitted).  The Court declined to endorse that argument, which would "extend[] to place *any* federal regulation * * * of *any* locally cultivated and possessed controlled substance for *any* purpose" beyond Congress' constitutional control.  *Id.*

*Raich* also considered the plaintiffs' argument that intrastate marijuana could not be constitutionally prohibited because it was being used as medicine—on the advice of physicians—consistent with California law. 545 U.S. at 27. The Court explained that "even if" that were true, it would indicate at most that marijuana "should be redesignated as a lesser schedule drug" and the Controlled Substances Act "would still impose controls beyond what is required by California law." *Id.* The Act "requires manufacturers, physicians, pharmacies, and other handlers of controlled substances to comply with statutory and regulatory provisions mandating registration with the" Attorney General, "compliance with specific production quotas, security controls to guard against diversion, recordkeeping and reporting obligations, and prescription requirements." *Id.* at 27-28 (citing 28 U.S.C. §§ 821-830). Thus, "the mere fact that marijuana—like virtually every other controlled substance regulated by the CSA—is used for medicinal purposes cannot possibly serve to distinguish it from the core activities regulated by the CSA." *Id.* at 28.

Nor did compliance with state law put the plaintiffs' "activities beyond congressional reach," because in any conflict between state and federal law, "federal law shall prevail." *Raich*, 545 U.S. at 29. And "[j]ust as state acquiescence to federal regulation cannot expand the bounds of the

17

Commerce Clause * * * so too state action cannot circumscribe Congress' plenary commerce power." *Id.* California's decision to legalize and strictly regulate medical marijuana "cannot retroactively divest Congress of its authority under the Commerce Clause." *Id.* at 29 n.38.

The Supreme Court later relied on *Raich*'s analysis in upholding a federal defendant's conviction under the Hobbs Act, because the defendant had robbed the homes of two marijuana dealers. *Taylor v. United States*, 579 U.S. 301, 303-04 (2016). The Court explained that the criminalized conduct fell within Congress' regulatory authority under the Commerce Clause because "[u]nder *Raich,* the market for marijuana, including its intrastate aspects, is 'commerce over which the United States has jurisdiction.'" *Id.* at 307. Thus, because "Congress may regulate the purely intrastate possession and sale of illegal drugs, Congress may criminalize the theft or attempted theft of those same drugs." *Id.* at 309.

As this Court and other courts have repeatedly recognized, *Raich* made clear that when Congress properly exercises its Commerce Clause powers to enact a broad regulatory scheme, courts may not excise individual applications on the ground that they do not constitute commercial activity or have only a de minimis effect on interstate commerce. In *United States v. Nascimento*, 491 F.3d 25 (1st Cir. 2007), for

example, this Court relied on *Raich* to uphold a federal conviction under the Racketeer Influenced and Corrupt Organizations Act to defendants "engaged in violent, but noneconomic, criminal activity," *id.* at 29-30. This Court observed that in *Raich*, the plaintiffs sought to "excise individual applications of a concededly valid statutory scheme." *Id.* at 41 (quoting *Raich*, 545 U.S. at 23). But the Supreme Court refused to do so, upholding Congress' choice for which activities to regulate and rejecting the California "legislature's effort to 'surgically excise[]' medical marijuana from the generality of the drug laws." *Id.*; *see also United States v. Stewart*, 451 F.3d 1071, 1076-77 (9th Cir. 2006) (relying on *Raich* to hold that the statutory ban on machineguns could properly be applied to machineguns personally machined and assembled by the defendant), *overruled on other grounds by District of Columbia v. Heller*, 554 U.S. 570 (2008); *United States v. Maxwell*, 446 F.3d 1210, 1216 (11th Cir. 2006) (upholding bar on knowing possession of child pornography, observing that *Raich* "could serve as an opinion in this case by simply replacing marijuana and the [Controlled Substances Act] with child pornography and the [Child Pornography Prevention Act]").

**B.** Plaintiffs do not appear to dispute the application of *Raich's* reasoning to these and other statutes, and they do not argue that the

Controlled Substance Act's general application to marijuana exceeds Congress' Commerce Clause authority. Instead, they urge that this Court should excise from the statute the cultivation and distribution of marijuana in any state that permits and regulates marijuana markets.

**1.** As an initial matter, "overruling Supreme Court precedent is the [Supreme] Court's job, not" the court of appeals', and so district and circuit courts "must follow [*Raich*] until the Court specifically tells us not to." *United States v. Morosco*, 822 F.3d 1, 7 (1st Cir. 2016). The Supreme Court's "decisions remain binding precedent until [the Court] see[s] fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." *Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016) (quotation marks omitted).

Consistent with this principle of *stare decisis*, this Court "do[es] not have the power to revisit Supreme Court decisions," even when a plaintiff argues that "[t]he time has come to revisit" them. *Frese v. Formella*, 53 F.4th 1, 6 (1st Cir. 2022), *cert. denied,* 144 S. Ct. 72 (U.S. 2023); *accord United States v. Ivery*, 427 F.3d 69, 75 (1st Cir. 2005) ("It is not our place to anticipate the Supreme Court's reconsideration of its prior rulings.").

The Fifth Circuit applied these fundamental principles in *National Coalition for Men v. Selective Service System*, 969 F.3d 546 (5th Cir. 2020)

(per curiam), *cert. denied*, 141 S. Ct. 1815 (2021), in concluding that changes in relevant circumstances did not permit it to depart from the Supreme Court's decision in *Rostker v. Goldberg*, 453 U.S. 57 (1981), which had upheld the constitutionality of the male-only military draft. *Rostker*'s holding was based in substantial part "on the fact that women were then barred from serving in combat," whereas women may now serve in all military combat roles. *National Coalition for Men*, 969 F.3d at 548. Based on these factual changes, the district court concluded that the Supreme Court's decision "no longer controlled" and thus the male-only registration requirement was unconstitutional. *Id.*

The Fifth Circuit reversed, explaining that it "cannot ignore a decision from the Supreme Court unless directed to do so by the Court itself." *National Coalition for Men*, 969 F.3d at 549 (quotation marks omitted). To support that conclusion, the court pointed to *State Oil Co. v. Khan*, 522 U.S. 3 (1997), where the Supreme Court overturned an earlier antitrust precedent based on changed facts (*i.e.*, vertical price fixing had become more common with "procompetitive potential[s]"). *National Coalition for Men*, 969 F.3d at 549. In doing so, the Supreme Court noted the court of appeals' faithful application of its earlier precedent, agreeing that "it is this Court's prerogative alone to overrule one of its precedents." *Id.* (quoting

*State Oil Co.*, 522 U.S. at 20).  Thus, even when the "factual underpinning of the controlling Supreme Court decision has changed, [] that does not grant a court of appeals license to disregard or overrule that precedent." *Id.* at 549-50 (collecting cases).  Judge Stahl of this Court likewise explained that modern-day constitutional challenges to the male-only draft were foreclosed by *Rostker*, despite factual changes in the intervening years. *Elgin v. U.S. Department of Treasury*, 641 F.3d 6, 22-24 (1st Cir. 2011) (Stahl, J., concurring); *id.* at 24 ("In any event, it would not be for this court to determine what, if any, impact these developments had on the continued vitality of *Rostker,* a task left solely to the Supreme Court.").

Consistent with these principles, the Supreme Court in *United States v. Vaello Madero*, 596 U.S. 159 (2022), held that its precedents foreclosed the defendant's constitutional challenge to Congress' exclusion of Puerto Rico from the Supplemental Security Income program, *id.* at 164-65.  The Court held that *Califano v. Torres*, 435 U.S. 1 (1978) (per curiam), and *Harris v. Rosario*, 446 U.S. 651 (1980) (per curiam), established that Congress had a rational basis to treat Puerto Rico differently for benefits programs based on its tax status, and so Congress could likewise rationally treat Puerto Rico differently for the Supplemental Security Income program based on its tax status.  *Vaello Madero*, 596 U.S. at 164-65.  This Court had

reached a contrary result based on its conclusion that *Califano* and *Harris* did not control. *United States v. Vaello-Madero*, 956 F.3d 12, 18-23 (1st Cir. 2020). The Supreme Court "respectfully disagree[d]" with that judgment, held that its precedents "dictate[d] the result here," and reversed. *Vaello Madero*, 596 U.S. at 164-65. Plaintiffs are thus mistaken in their invitation for this Court to disregard *Raich*.

**2. a.** Moreover, plaintiffs fail to demonstrate any constitutionally significant changes that would invalidate Congress' regulation under the Controlled Substances Act. Plaintiffs repeatedly note that many states have legalized medical and recreational marijuana, Br. 2, 6, 8, 13, 34, 42, but *Raich* squarely held that state legalization of a controlled substance "cannot retroactively divest Congress of its authority under the Commerce Clause," 545 U.S. at 29 n.38.

Plaintiffs place primary reliance on an appropriations provision that concerns state laws regarding marijuana grown and used for medical purposes. Br. 13, 30-34. That provision states that appropriations to the Department of Justice may not be used "to prevent" various States and territories "from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana." Consolidated Appropriations Act, 2002, Pub. L. No. 117-103, division B,

title V, § 531, 136 Stat. 49, 150-51.  The provision does not apply to Idaho, Kansas, or Nebraska.  *Id.*

It is unclear how this argument, even taken on its own terms, provides support for plaintiffs' claims.  Plaintiffs allege that their conduct implicates recreational marijuana, which is not covered by the appropriations provision.  Add. 2 n.1; *see also* A16, ¶¶ 7-8 (distinguishing between medical and "adult-use" recreational marijuana); A25, ¶ 32 (Canna Provisions "operates two adult-use dispensaries"); A30, ¶ 45 (Verano Holdings possessed state "medical, and adult-use licenses").  Moreover, plaintiffs' challenge is not limited to medical marijuana but instead contests Congress' general regulation of "the cultivation, possession, and distribution of state-regulated marijuana."  Br. 15.

In all events, the appropriations provision regarding medical marijuana is inapplicable when growers supply marijuana "to persons known not to be qualifying patients" under relevant state law.  *United States v. Bilodeau*, 24 F.4th 705, 715 (1st Cir. 2022).  And it cannot plausibly be said to demonstrate that "Congress no longer believes that prohibiting state-regulated marijuana is an 'essential part of the larger regulatory scheme.'"  Br. 33 (quoting *Raich*, 545 U.S. at 27).  Nor do plaintiffs attempt to address—under their theory—how existing federal

statutes may be affected if states can extinguish Congress' constitutional authority by enacting their own regulatory schemes. If Congress wishes to amend the Controlled Substances Act it is free to do so. But it is not for plaintiffs or the courts to infer what Congress now "believes" about the scope of the statute. To the contrary, so long as there is "a rational basis for the solution that Congress has devised, the court should respect the level of generality at which Congress chose to act." *Nascimento*, 491 F.3d at 42 (refusing to "insist that Congress make 'detailed findings proving that each activity regulated within a comprehensive statute is essential to the statutory scheme").

Thus, "although New York and many other states have legalized adult use of marijuana, possession of the drug continues to be a federal crime" under *Raich*'s holding. *United States v. Francis*, 77 F.4th 66, 73 (2d Cir. 2023); *accord United States v. Amalfi*, 47 F.4th 114, 125-26 (2d Cir. 2022) (rejecting constitutional challenges to Controlled Substances Act's regulation of marijuana); *Monson v. Drug Enforcement Administration*, 589 F.3d 952, 963 (8th Cir. 2009) (*Raich* "disposes of Monson and Hauge's argument that the CSA cannot be interpreted to reach their intrastate cultivation and processing of cannabis"); *United States v. Maupin*, 3 F.4th

1009, 1012-13 (8th Cir. 2021) (applying *Raich* to reject a federalism

challenge to marijuana's regulation under the Controlled Substances Act).

In arguing to the contrary, plaintiffs mistakenly seek to rely on

*Northeast Patients Group v. United Cannabis Patients and Caregivers of*

*Maine*, 45 F.4th 542 (1st Cir. 2022), in which this Court held that Maine's

residency requirement for officers and directors of medical marijuana

dispensaries violated the dormant Commerce Clause. *Id.* at 544. The Court

explained that as part of the Controlled Substances Act, Congress sought to

control "an established, *albeit illegal*, interstate market" for marijuana. *Id.*

at 547. And the Court cited *Raich* for the unsurprising proposition that

"Congress had the authority under the Commerce Clause to 'prohibit the

local cultivation and use of marijuana' even when undertaken in

compliance with state law." *Id.*

**b.** Plaintiffs are on no firmer ground in arguing that Congress'

Commerce Clause authority has been diminished by the Justice

Department's enforcement priorities. Plaintiffs note the enforcement

guidance provided in the 2013 memorandum by Deputy Attorney General

James Cole, which described the Department's enforcement priorities with

respect to marijuana. The memorandum explained that outside those

priorities, the Department had "traditionally relied on states and local law

26

enforcement agencies to address marijuana activity through enforcement of their own narcotics laws." Office of the Deputy Attorney General, *Guidance Regarding Marijuana Enforcement* 2 (Aug. 29, 2013). As the district court explained, a policy that the Department of Justice chooses to exercise "prosecutorial discretion" in certain cases does not indicate that the United States is forbidden from enforcing the statutes that Congress has otherwise constitutionally enacted. Add. 9. Congress' constitutional authority does not wax and wane with the Executive Branch's enforcement priorities. And the federal government continues to enforce federal statutes related to marijuana in both criminal and civil actions.[4]

Plaintiffs' position would also frustrate the Department's proposal to place marijuana on Schedule III of the CSA. As a Schedule III substance, marijuana could be lawfully prescribed by physicians, but only within a closed system of distribution, *see Raich*, 545 U.S. at 13, and subject to a

---

[4] *See, e.g.*, *Bilodeau*, 24 F.4th at 708; *United States v. Rivera-Medina*, 2024 WL 3064944, at *1 (1st Cir. June 20, 2024) (affirming conviction for intent to distribute marijuana); *United States v. Pennington*, 2024 WL 4249937, at *1 (11th Cir. Sept. 20, 2024) (same); *United States v. Prater*, 2024 WL 3634526, at *1-2 (6th Cir. Aug. 2, 2024) (same); *United States v. Marin*, 2024 WL 3565819, at *1 (4th Cir. July 29, 2024) (same); *United States v. Ayala-Alas*, 2024 WL 3357858, at *1 (5th Cir. July 10, 2024); *United States v. Freno*, 2024 WL 3199972, at *1 (8th Cir. June 27, 2024) (same); *Fejes v. FAA*, 98 F.4th 1156, 1161 (9th Cir. 2024) (mandatory revocation of a pilot's license for intrastate air transportation of marijuana).

number of federal regulatory requirements that apply to all Schedule III substances, including other prescription drugs like testosterone and certain mixtures of codeine. 21 C.F.R. § 1308.13(c)(7), (e)(1)(ii), (f)(84). Manufacturers and distributors of these substances must register with the Attorney General, 21 U.S.C. § 822, meet quota production requirements, *id.* § 826, and report suspicious orders, *id.* § 832, and they may have their registrations suspended or revoked for violations of the Controlled Substances Act, *id.* §§ 823(e)-(f), 824(a). Likewise, the unlawful manufacture, sale, and possession of Schedule III substances still carry criminal penalties, *id.* § 841(b)(1)(E)(i); *id.* § 844(a), which are not dependent upon state regulatory regimes. Under plaintiffs' theory, Congress would lack constitutional authority to regulate marijuana as a Schedule III drug for the same reasons that it could not regulate marijuana as a Schedule I drug.

**3.** Although plaintiffs focus their argument on the assertion that *Raich* is no longer good law, Congress had Commerce Clause authority to regulate their conduct long before that case was decided. The Court in *Raich* did not need to establish that Congress can regulate intrastate commercial conduct as part of a larger national scheme; that principle had long been settled. *See, e.g.*, *Gibbons v. Ogden*, 22 U.S. 1, 194 (1824)

("Commerce among the States, cannot stop at the external boundary line of each State, but may be introduced into the interior."); *United States v. Wrightwood Dairy Co.*, 315 U.S. 110, 119-20 (1942) (collecting cases and holding that "[c]ompetitive practices which are wholly intrastate may be reached by the Sherman Act"). The issue in *Raich*, instead, was the scope of Congress' authority to regulate noncommercial conduct occurring outside the marijuana market. Congress would have had the power to regulate the type of conduct in which plaintiffs are engaged even if *Raich* had been decided in favor of plaintiffs. And plaintiffs identify no authority for the proposition that enactment of state laws extinguishes Congress' Commerce Clause authority.

## II.  Plaintiffs Have Not Demonstrated a Substantive Due Process Right to Grow, Transport, and Sell Marijuana

Plaintiffs also argue that they have a substantive due process right to grow and sell marijuana free from federal—but not state—regulation. A52, ¶ 111 ("The right to cultivate, manufacture, possess, and distribute marijuana, subject only to state health, safety, and public welfare regulations, is deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty.").

Plaintiffs' claim is an unusual one—they cite no authority for the proposition that a substantive due process claim can prevent regulation by

the United States, while simultaneously leaving the several States free to impinge and regulate the asserted fundamental right as they see fit.  If there were a fundamental right to use marijuana protected by the Constitution, it would preclude state regulation to the same extent as federal regulation. *See Timbs v. Indiana*, 586 U.S. 146, 150 (2019) (for fundamental constitutional rights "there is no daylight between the federal and state" regulation).  Plaintiffs presumably have adopted this novel position because their Commerce Clause argument depends in part on the premise that different states will enact different schemes and that Congress' Commerce Clause authority depends on the existence of state marijuana regulations. *Cf. District Attorney's Office for Third Judicial District v. Osborne*, 557 U.S. 52, 72 (2009) (the "mere novelty of such a claim is reason enough to doubt that 'substantive due process' sustains it.").

The Constitution's Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests."  *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). With respect to such "fundamental right[s]," the government "can act only by narrowly tailored means that serve a compelling state interest." *Department of State v. Muñoz*, 144 S. Ct. 1812, 1821 (2024).  Declaring these "unenumerated rights carries a serious risk of judicial overreach, so"

the Supreme Court "exercise[s] the utmost care whenever we are asked to break new ground in this field." *Id.* at 1821-22. Thus, there must be "a careful description of the asserted fundamental liberty interest," and the asserted right must be "objectively, deeply rooted in this Nation's history and tradition." *Id.* at 1822 (quotation marks omitted).

"As a general matter," the Supreme Court "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). The Supreme Court has held that there is no fundamental right to physician-assisted suicide,[5] to bringing a non-citizen spouse to live in the United States,[6] to have noncitizen minors released from detention to adults who are not their legal guardians,[7] to "governmental aid, even where such aid may be necessary to secure life, liberty, or property interests,"[8] or to provide government "employees with a safe working environment."[9]

---

[5] *Glucksberg*, 521 U.S. at 735-36.

[6] *Muñoz*, 144 S. Ct. at 1822-23.

[7] *Reno v. Flores*, 507 U.S. 292, 301-03 (1993).

[8] *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 196 (1989).

[9] *Collins*, 503 U.S. at 126.

The Ninth Circuit, on remand from the Supreme Court's decision in *Raich*, held that the intrastate cultivation and use of marijuana for medical use was not protected by substantive due process. *Raich v. Gonzales*, 500 F.3d 850, 864-66 (9th Cir. 2007). The court concluded that marijuana's status "has not yet reached the point where * * * the right to use medical marijuana is 'fundamental' and 'implicit in the concept of ordered liberty.'" *Id.* at 866 (quoting *Glucksberg*, 521 U.S. at 720-21). Instead, medical marijuana use was left to "the arena of public debate and legislative action." *Id.*

Here, of course, plaintiffs do not limit their claim of a "fundamental right" to grow and sell marijuana solely for medical use, but to grow and sell marijuana for purely recreational use as well. Br. 51; Add. 2 n.1. As the Ninth Circuit recently reiterated, there is "no federally protected property interest [] in cultivating marijuana" and thus no merit to a "substantive due process claim[]" concerning such marijuana use. *Borges v. County of Mendocino*, 2023 WL 2363692, at *1 (9th Cir. Mar. 6, 2023), *cert. denied*, 144 S. Ct. 186 (2023); *accord United States v. Langley*, 17 F.4th 1273, 1274-75 (9th Cir. 2021) (same). *Cf. United States v. Cannon*, 36 F.4th 496, 502 (3d Cir. 2022) (per curiam) ("[I]t is certainly not 'clear under current law'

that there is any fundamental right to use medical marijuana," and so the defendant had not established plain error).

The D.C. Circuit employed much the same analysis in concluding that there is no fundamental right for terminally ill patients to access experimental drugs. *Abigail Alliance for Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695, 703-07 (D.C. Cir. 2007). In doing so, the court rejected the argument—pressed by plaintiffs here—that the relatively recent regulation of those drugs demonstrated that there was a fundamental liberty interest in accessing those drugs that pre-dated federal regulation. *Id.* at 706. While a lack of regulation "might be some evidence," it was insufficient to demonstrate a fundamental right by itself. *Id.* For instance, "Congress did not regulate narcotics until 1866 when it heavily taxed opium, a drug created long before our Nation's founding," but it does not follow that "individuals have a right to acquire and use narcotics free from regulation." *Id.* at 707. For the same reason, although "Congress did not significantly regulate marijuana until 1937," that was not enough to demonstrate "a tradition of protecting marijuana use." *Id.* The court correctly rejected such "sweeping claims of fundamental rights." *Id.* at 706-07.

The decisions of other courts of appeals are in accord. *E.g.*, *United States v. White Plume*, 447 F.3d 1067, 1075 (8th Cir. 2006) (holding that there is no fundamental right to "farming," as so "[i]t follows that we also decline to declare 'hemp farming' a fundamental right."); *United States v. Fry*, 787 F.2d 903, 905 (4th Cir. 1986) ("There is no fundamental right to produce or distribute marijuana commercially."). And a contrary conclusion—that plaintiffs possess a fundamental right to grow and sell marijuana for medical and recreational purposes—would appear to prohibit the United States from regulating marijuana even if it were placed on Schedule III unless the government were able to satisfy strict scrutiny. *Muñoz*, 144 S. Ct. at 1821.

Almost all of plaintiffs' arguments concerning the history of growing hemp and promoting hemp industry (Br. 47-55) are equally applicable, if not even more relevant, to the history of tobacco farming in the United States. "From the first settlement of the colony of Virginia to the present day tobacco has been one of the most profitable and important products of agriculture and commerce, and while its effects may be injurious to some, its extensive use over practically the entire globe is a remarkable tribute to its popularity and value." *Austin v. Tennessee*, 179 U.S. 343, 345 (1900). Federal regulation of cigarettes did not begin in earnest until 1965, and

then concerned the warning labels to be placed upon tobacco products, rather than comprehensive regulation of the tobacco market. Federal Cigarette Labeling and Advertising Act, Pub. L. No. 89-92, 79 Stat. 282 (1965). It would be a startling conclusion if there was a fundamental liberty interest in growing and selling tobacco free from federal regulation—yet plaintiffs' argument appears to encompass that mistaken conclusion. The district court thus correctly held that state legalization of marijuana "alone neither requires nor permits this court to recognize a fundamental right to engage in such conduct." Add. 14.

## CONCLUSION

The district court's judgment should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

MARK B. STERN
SARAH CARROLL
 */s/ Daniel Aguilar*
DANIEL AGUILAR
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7266*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-5432*
  *daniel.j.aguilar@usdoj.gov*

October 2024

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,240 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Georgia 14-point font, a proportionally spaced typeface.

*/s/ Daniel Aguilar*
Daniel Aguilar

**CERTIFICATE OF SERVICE**

I hereby certify that on October 10, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

*/s/ Daniel Aguilar*
Daniel Aguilar