# United States Court of Appeals

*for the*

# First Circuit

---

Case No. 24-1628

CANNA PROVISIONS, INC.; GYASI SELLERS; WISEACRE FARM, INC.;
VERANO HOLDINGS CORP.,

*Plaintiffs-Appellants,*

v.

MERRICK B. GARLAND, Attorney General,

*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT
OF MASSACHUSETTS, SPRINGFIELD IN CASE NO. 3:23-CV-30113-MGM
HONORABLE MARK G. MASTROIANNI, DISTRICT JUDGE

---

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

---

DAVID BOIES
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, New York 10504
(914) 749-8200

JONATHAN D. SCHILLER
MATTHEW L. SCHWARTZ
DAVID P.G. BARILLARI
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001
(212) 446-2300

JOSHUA I. SCHILLER
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, California 94104
(415) 293-6800

*Attorneys for Plaintiffs-Appellants*



# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................4

    I.   The Court Must Apply *Raich*'s Reasoning to the New Legislative
       Regime, Rather Than Mechanically Adhering to *Raich*'s Outcome..............4

        A.  When No Supreme Court Provision Directly Controls, This
            Court Must Perform Its Own Assessment Rather Than
            Mechanically Apply Prior Precedents...................................................5

        B.  The Rohrabacher-Farr Amendments Have Changed the
            Legislative Scheme Governing Marijuana Post-*Raich*;
            Therefore, *Raich* Does Not Directly Control the Outcome of
            This Case. .............................................................................................9

    II.  The District Court Impermissibly Extended *Raich* to a Regime Where
       Congress's Marijuana Regulation Is Not Comprehensive and Where
       Regulating Interstate Marijuana Is Not Necessary......................................19

    III. Plaintiffs Plausibly Alleged a Fifth Amendment Claim.............................26

CONCLUSION ...................................................................................................29

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Artis v. D.C.*,
    583 U.S. 71 (2018) ............................................................................21

*Bais Yaakov of Spring Valley v. ACT, Inc.*,
    798 F.3d 46 (1st Cir. 2015) ..............................................................2, 5

*Cook v. Gates*,
    528 F.3d 42 (1st Cir. 2008) ........................................................ 27, 29

*Everytown for Gun Safety Support Fund v. Bureau of Alcohol, Tobacco, Firearms
    & Explosives*,
    984 F.3d 30 (2d Cir. 2020) ......................................................... 15, 16

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp*.,
    529 U.S. 120 (2000) ..........................................................................28

*Frese v. Formella,*
    53 F.4th 1 (1st Cir. 2022) ..................................................................18

*Garrison v. Louisiana*,
    379 U.S. 64 (1964) ............................................................................18

*Gonzalez v. Raich*,
    545 U.S. 1 (2005) ...................................................................... passim

*Hobby Distillers Ass'n v. Alcohol & Tobacco Tax & Trade Bureau*,
    2024 WL 3357841 (N.D. Tex. July 10, 2024) ..................................23

*Jefferson Cnty. v. Acker*,
    210 F.3d 1317 (11th Cir. 2000) .....................................................2, 20

*Jinks v. Richland Cnty., S.C.*,
    538 U.S. 456 (2003) ..........................................................................21

*Kyle-Labell v. Selective Serv. Sys.*,
    364 F. Supp. 3d 394 (D.N.J. 2019) ...................................................19

*Lambrix v. Singletary*,
    520 U.S. 518 (1997) ................................................................ 6, 9, 10

*McCulloch v. Maryland*,
   17 U.S 316 (1819) ..................................................................................9

*Miller v. United States*,
   357 U.S. 301 (1958) ...............................................................................8

*Nat'l Coalition for Men v. Selective Service System*,
   969 F.3d 546 (5th Cir. 2020) ......................................................... 18, 19

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
   567 U.S. 519 (2012) .............................................................................25

*Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Maine*,
   45 F.4th 542 (1st Cir. 2022) ......................................................... passim

*Riley v. California*,
   573 U.S. 373 (2014) .............................................................................6, 7

*Rostker v. Goldberg*,
   453 U.S. 57 (1981) ...................................................................... 18, 19, 25

*Shelby Cnty., Ala. v. Holder*,
   570 U.S. 529 (2013) .............................................................................25

*Tenn. Valley Auth. v. Hill*,
   437 U.S. 153 (1978) .............................................................................12

*United States v. Acosta*,
   502 F.3d 54 (2d Cir. 2007)...................................................................8, 18

*United States v. Bilodeau*,
   24 F.4th 705 (1st Cir. 2022) ...............................................................11

*United States v. Bruno*,
   487 F.3d 304 (5th Cir. 2007) ........................................................ 8, 9, 19

*United States v. Lopez*,
   514 U.S. 549 (1995)..............................................................................22

*United States v. McIntosh*,
   833 F.3d 1163 (9th Cir. 2016) ..............................................................1

*United States v. Nixon*,
   839 F.3d 885 (9th Cir. 2016) ...............................................................12

*United States v. Robertson*,
   514 U.S. 669 (1995) .............................................................................22

*United States v. Robinson*,
   414 U.S. 218 (1973) ...........................................................................6, 7

*United States v. Sirois*,
   2024 WL 4490821 (1st Cir. Oct. 15, 2024) .......................................11

*United States v. Southerland*,
   466 F.3d 1083 (D.C. Cir. 2006) ........................................................8, 18

*United States v. Wrightwood Dairy Co.*,
   315 U.S. 110 (1942) ........................................................................ 21, 22

*United States v. Wurie*,
   728 F.3d 1 (1st Cir. 2013). .................................................................6, 7

*Washington v. Glucksberg*,
   521 U.S. 702 (1997) .............................................................................26

**Statutes**

18 U.S.C. § 3109 ..........................................................................................8

21 U.S.C. § 801 .................................................................................... 14, 15

21 U.S.C. § 811 ..........................................................................................16

Consolidated Appropriations Act, 2022,
   Pub. L. No. 117-103, § 531, 136 Stat. 49 (2022)..................................13

**Other Authorities**

Antonin Scalia, *The Rule of Law As A Law of Rules*,
   56 U. Chi. L. Rev. 1175 (1989) ............................................................7

*Laws of the State of Delaware* (1797) ....................................................28

*State Medical Cannabis Laws*, NCSL (Jul. 12, 2024)............................13

## **INTRODUCTION**

As the well-pleaded allegations of the Complaint make clear, the federal ban on intrastate marijuana that Plaintiffs-Appellants are challenging is drastically different from the "regulatory scheme" that the Supreme Court ruled on in *Gonzalez v. Raich*, 545 U.S. 1, 27 (2005). The Government's response entirely fails to accept or deal with this fact.

When *Raich* was decided, the Controlled Substances Act ("CSA") embodied (1) Congress's "comprehensive regulatory regime" to totally ban interstate commerce in marijuana and (2) Congress's judgment that banning local marijuana, even marijuana permitted under state law, was an "essential part of the larger regulatory scheme." *Id.*

But "the CSA was not Congress's last word on the market in marijuana"; following *Raich*, Congress abandoned its comprehensive approach to marijuana and enacted legislation permitting state-regulated marijuana commerce "free from federal criminal enforcement" and "subject only to state regulation." *Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Maine*, 45 F.4th 542, 549, 553 (1st Cir. 2022). These Rohrabacher-Farr Amendments changed "the overall statutory scheme for marijuana regulation." *United States v. McIntosh*, 833 F.3d 1163, 1176 (9th Cir. 2016). These significant legislative changes mean that *Raich* is not a case that "directly controls" and thus this Court has the right, and the

obligation, to conduct its own "analysis to determine whether we would reach the same outcome" as *Raich* or a different outcome. *Bais Yaakov of Spring Valley v. ACT, Inc.*, 798 F.3d 46, 50 (1st Cir. 2015).

Defendant-Appellee Merrick Garland asserts that this Court must adhere to *Raich*; there "is, however, a difference between following a precedent and extending a precedent." *Jefferson Cnty. v. Acker*, 210 F.3d 1317, 1320 (11th Cir. 2000). Here, the District Court did not *follow Raich*; it *extended Raich* to sustain Congress's regulation of intrastate marijuana without the findings that such regulation was necessary and proper to protect Congressional regulation of interstate marijuana, findings critical to *Raich*'s holding. In doing so, the District Court elevated *Raich*'s outcome above the legal principles *Raich* relied on to reach that result. Indeed, the District Court's holding gives Congress authority to regulate purely intrastate commerce, even when Congress has made clear that such regulation does not serve any interstate scheme, a stark contrast from *Raich*, which upheld the CSA's intrastate marijuana ban only after concluding that Congress had deemed it an "essential part of the larger regulatory scheme." 545 U.S. at 27. The District Court thus expanded *Raich* farther than *Raich*'s own analysis, and the Constitution, permits.

Whether *Raich* itself was wrongly decided, as Justice Thomas has argued and as Plaintiffs reserve the right to assert, is a question for the Supreme Court. But whether *Raich* should be extended to a radically different regulatory scheme is a

2

question for this Court. Defendant insists that Congress can regulate intrastate marijuana merely because it is a commodity. But *Raich* instructs that Congress can regulate intrastate commodities only when doing so is essential to the *interstate* regulation of that commodity. On this point, Defendant's brief is tellingly silent as to what goals the current federal regime serves, let alone how banning state-regulated, intrastate marijuana is necessary to achieve those goals.

When *Raich* is properly applied to the current federal ban on state-regulated marijuana, there is only one permissible result: the ban fails to satisfy the Necessary and Proper Clause and is unconstitutional. Congress's enactments since *Raich* preclude any notion that controlling state-regulated marijuana is essential to Congress's current treatment of marijuana. They are also irreconcilable with the CSA's statutory findings on which *Raich* relied.

The federal government's ban is unconstitutional for the independent reason that it violates Plaintiffs' due process rights, which are rooted in Anglo-American legal traditions dating back to the Magna Carta. To avoid this issue, Defendant raises a false equivalency between the state laws that legalize and regulate marijuana, and the federal regime that still criminalizes it. There is no equivalency. Unlike the balance of interests reflected in these states' laws, the federal government's blanket prohibition on marijuana cannot even arguably be deemed reasonably and narrowly

3

tailored. That prohibition is therefore unconstitutional under the Fifth Amendment, and the District Court erred by dismissing that claim.

## **ARGUMENT**

### I. The Court Must Apply *Raich*'s Reasoning to the New Legislative Regime, Rather Than Mechanically Adhering to *Raich*'s Outcome.

*Raich* recognizes that the Necessary and Proper Clause governs the "question" of when Congress can criminalize state-regulated intrastate marijuana. 545 U.S. at 5. *Raich* resolved that question by holding that Congress can prohibit state-regulated marijuana when doing so is "*an essential part of a larger regulation of economic activity*, in which the regulatory scheme could be undercut unless the intrastate activity were regulated." *Id.* at 24 (emphasis added). This appeal thus turns on whether prohibiting state-regulated marijuana is an essential part of the *current* federal regime governing marijuana.

Rather than engage in that merits analysis, Defendant attempts to avoid it. He insists that Plaintiffs' arguments would require this Court to "declare that *Gonzales v. Raich*, 545 U.S. 1 (2005), is no longer good law." Appellee Br. at 12. Defendant's argument misstates both Plaintiffs' claims and the law. "Plaintiffs' claims do not depend on overruling *Raich*; instead they rest on the significant changes in legislative and operative facts, which together mean that *Raich* lacks 'direct application' to the Complaint." Opp'n to Mot. to Dismiss, *Canna Provisions, Inc. v. Garland*, No. 3:23-cv-30113-MGM, ECF 36 at 23 (Mar. 15, 2024); *see also* App.

4

Br. at 46 n.2. Those legislative changes have resulted in a vastly different regulatory scheme than the one reviewed in *Raich*. Because Plaintiffs are challenging a different scheme than the one that existed in *Raich*'s time, the outcome in *Raich* does not directly control here. *See* App. Br. 15–16; Part I.A–B, *infra*.

### A. When No Supreme Court Provision Directly Controls, This Court Must Perform Its Own Assessment Rather Than Mechanically Apply Prior Precedents.

If a prior Supreme Court decision "directly controls" the outcome in a case, courts must adhere to that result; however, if the Supreme Court's case law is distinguishable, this Court must perform its own "analysis to determine whether we *would reach the same outcome*" under the new circumstances as the Supreme Court did under the prior circumstances. *Bais*, 798 F.3d at 50 (emphasis added). There is thus "a difference between *following* a precedent and *extending* a precedent." *Jefferson Cnty.*, 210 F.3d at 1320 (emphasis added). If the relevant legislation or facts of the "Supreme Court decision do not line up closely with the facts before us," "it cannot be said that decision 'directly controls,'" and a court must then apply its own reasoning to determine whether to extend that decision to the circumstance before it. *Id.*

The Supreme Court itself has explained that the test for identifying "controlling authority" is a narrow one: for a Supreme Court decision to "compel the outcome" in a subsequent case, the Supreme Court decision must "answer the

definitive question" in the subsequent case. *Lambrix v. Singletary*, 520 U.S. 518, 528 n.3 (1997). The Supreme Court has therefore warned against "mechanical application" of its precedents to new circumstances. *Riley v. California*, 573 U.S. 373, 387 (2014). *Riley* provided that guidance in a case affirming *this Court's* decision to distinguish a prior Supreme Court decision rather than extend it to new circumstances. *Id.*

In *United States v. Wurie*, a criminal defendant challenged the search of his cell phone that had been performed incident to his arrest. 728 F.3d 1, 1 (1st Cir. 2013). Forty years prior, the Supreme Court had held in *United States v. Robinson*, that the police had "categorical" permission to search within objects found on an arrestee, regardless of the "probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect." 414 U.S. 218, 225, 235 (1973) (upholding search of cigarette pack). In *Wurie*, the Government advocated for a "literal reading of the *Robinson* decision," "urging us to find that a cell phone, like any other item carried on the person, can be thoroughly searched incident to a lawful arrest." 728 F.3d at 6–7.

This Court rejected the argument that *Robinson* controlled. While acknowledging that "*Robinson* speaks broadly, and that the Supreme Court has never found the constitutionality of a search of the person incident to arrest to turn on the kind of item seized," *Wurie* concluded that the differences between cell phones and

6

other personal items meant that *Robinson* did not directly control. *Id.* at 1, 9. *Wurie* thus framed the issue not as one of following *Robinson* but of whether *Robinson*'s categorical rule "*extends* to data within an arrestee's cell phone." *Id.* at 3 (emphasis added). Because the underlying reasoning behind the *Robinson* rule—"the need to disarm and to discover evidence"—did not apply to searches of cell phone data, this Court concluded that cell phone searches are "*categorically* unlawful under the search-incident-to-arrest exception." *Id.* at 10–12. To use the late Justice Scalia's terminology, *Wurie* adhered to the "*mode of analysis*" mandated by the *Robinson* decision, even though the changed circumstances meant that the "*outcome*" would be different than in *Robinson*. Antonin Scalia, *The Rule of Law As A Law of Rules*, 56 U. Chi. L. Rev. 1175, 1177 (1989) (emphasis in original).

On appeal, the Supreme Court affirmed *Wurie* and confirmed that this Court was correct to frame the issue not as whether to overrule *Robinson* but whether "to extend *Robinson* to searches of data on cell phones." *Riley*, 573 U.S. at 386. *Robinson* remains good law for the personal items contemplated at the time but it does not extend to objects not then contemplated and different in material respects. The Supreme Court therefore reversed a California decision that had performed a "mechanical application" of *Robinson* to searches of cell phones. *Id.* at 386, 403.

The Fifth Circuit has likewise held that when Supreme Court cases "are not direct precedents," "they do not preclude us from concluding" that the opposite

7

outcome from those cases is required. *United States v. Bruno*, 487 F.3d 304, 306 (5th Cir. 2007). Under this analysis, "direct precedents" are those decisions in which the Supreme Court did "analyze the precise question" in the instant case. *Id.* The D.C. Circuit followed the same reasoning when considering whether a prior Supreme Court decision, *Miller v. United States*, 357 U.S. 301 (1958), was a "'direct' precedent" on how to apply the federal knock-and-announce statute, 18 U.S.C. § 3109. *United States v. Southerland*, 466 F.3d 1083, 1085 (D.C. Cir. 2006). Because *Miller* concerned a local knock-and-announce rule, and only referred to "§ 3109 by analogy," the D.C. Circuit held that *Miller* "cannot be considered a 'direct' precedent that" constrained how other courts interpret § 3109. *Id.*

*Bruno* and *Southerland*'s reasoning was adopted by the Second Circuit, which held that Supreme Court case law is not a "direct precedent" if the statute before the court "was not directly at issue" in the prior Supreme Court case. *United States v. Acosta*, 502 F.3d 54, 60 (2d Cir. 2007). Each of these cases—*Bruno*, *Southerland*, and *Acosta*—stands for the proposition that a Supreme Court precedent does not directly control if a new case involves a different legal regime than the one the Supreme Court reviewed, even if the two are closely related.

**B. The Rohrabacher-Farr Amendments Have Changed the Legislative Scheme Governing Marijuana Post-*Raich*; Therefore, *Raich* Does Not Directly Control the Outcome of This Case.**

**1. *Raich* Focused Its Necessary and Proper Clause Analysis on Congress's Overall Regulatory Scheme for Marijuana.**

To determine whether *Raich* directly controls the outcome here, it is necessary to identify the "precise question" that *Raich* resolved. *Bruno*, 487 F.3d at 306; *see Lambrix*, 520 U.S. at 528 n.3. The question *Raich* resolved was whether Congress could regulate state-regulated marijuana under the CSA, and the answer was that it could because when Congress "*enacted comprehensive legislation to regulate the interstate market* in a fungible commodity, Congress was acting well *within its authority to 'make all Laws which shall be necessary and proper'* to 'regulate Commerce among the several States.'" 545 U.S. at 22 (emphasis added) (original ellipses omitted) (quoting U.S. Const. art. I, § 8). Thus, *Raich* did not announce any "substantive and independent power" to regulate intrastate marijuana, nor intrastate commerce generally, *McCulloch v. Maryland*, 17 U.S 316, 411 (1819); *Raich* instead held that Congress's authority over intrastate marijuana depended on whether such regulation was "necessary and proper to regulate Commerce among the States," *i.e.*, whether it could be justified under the Necessary and Proper Clause, 545 U.S. at 22 (original ellipses omitted). *Raich* thus confirmed that Congress's power to regulate intrastate marijuana is not absolute; that power depends on whether the specific regulation is necessary and proper to achieving an interstate regulatory purpose.

To determine that regulatory purpose, *Raich* instructs that courts must look at the "entire regulatory scheme" and not merely the particular provision being challenged. *Id.* at 28. Throughout its Necessary and Proper Clause analysis, *Raich* repeatedly uses the phrases "comprehensive regime," "regulatory scheme," "congressional statutory scheme," "larger scheme," "larger regulatory scheme," "comprehensive framework," and "entire regulatory scheme" to define Congress's *interstate* regulatory purpose against which the *intrastate* regulation must be measured. *Id.* at 12, 19, 21–24, 26–29.

In 2005, that "larger regulatory scheme," *id.* at 27, was Congress's "comprehensive legislation" "to control the supply and demand of controlled substances in both lawful and unlawful drug markets," *id.* at 19, 22; *see id.* at 12 ("The main objectives of the CSA were to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances."); *id.* at 13 ("To effectuate these goals, Congress devised a closed regulatory system making it unlawful to manufacture, distribute, dispense, or possess any controlled substance *except in a manner authorized by the CSA*." (emphasis added)); *id.* at 27 ("Moreover, the CSA is a comprehensive regulatory regime specifically designed to regulate which controlled substances can be utilized for medicinal purposes, and in what manner."). Thus, the "definitive question," *Lambrix*, 520 U.S. at 528 n.3, that *Raich* resolved was that the "comprehensive framework" Congress had created around

10

marijuana in the CSA justified Congress's prohibition on state-regulated, intrastate marijuana, 545 U.S. at 24.

### 2. The Rohrabacher-Farr Amendments Changed the Statutory Scheme for Marijuana.

A decade after *Raich*, Congress revised the federal "framework" around marijuana, *Raich*, 545 U.S. at 24, by enacting the Rohrabacher-Farr Amendment, and Congress has continued to do so each year thereafter, A23 (Compl. ¶ 25). Under "the terms of the Rohrabacher-Farr Amendment, 'the DOJ may not spend funds to bring prosecutions if doing so prevents a state from giving practical effect to its medical marijuana laws.'" *United States v. Sirois*, 2024 WL 4490821, at *3 (1st Cir. Oct. 15, 2024) (quoting *United States v. Bilodeau*, 24 F.4th 705, 713 (1st Cir. 2022)).

This post-*Raich* legislation "prohibits DOJ from spending funds from relevant appropriations acts for the prosecution of individuals who engaged in conduct permitted by the State Medical Marijuana Laws," *McIntosh*, 833 F.3d at 1177, and "a party who seeks to enjoin their prosecution for an alleged marijuana-related CSA violation *need not demonstrate 'strict compliance'* with a state's laws and regulations that make the possession, cultivation, or distribution of medical marijuana lawful," *Sirois*, 2024 WL 4490821 at *4 (emphasis added). Thus, since 2014, Congress has barred the Department of Justice from enforcing the CSA against persons for participating in any state-regulated medical marijuana programs.

11

The amendments therefore are not simply appropriations legislation; they, as the Ninth Circuit concluded, occupy a "place in the overall statutory scheme for marijuana regulation." *McIntosh*, 833 F.3d at 1176. Because these statutes now dictate what actions the Department of Justice can take pursuant to the CSA, they represent a change in both the regulatory scheme for marijuana and its overarching goals; the amendments reflect "the exclusive province of the Congress not only to formulate legislative policies and mandate programs and projects, but also to establish their relative priority for the Nation." *Id.* at 1172 (quoting *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 194 (1978)); *see United States v. Nixon*, 839 F.3d 885, 888 (9th Cir. 2016) (holding, regarding the Rohrabacher-Farr Amendments and the CSA, that "as long as the appropriations rider is in effect," the "DOJ's ability to use certain funds to pursue individual prosecutions under that statute remains circumscribed").

This Court likewise concluded that the Rohrabacher-Farr Amendments have modified Congress's statutory scheme for marijuana. In 2022, this Court was asked to determine, in a Dormant Commerce Clause case, whether Congress intended to permit states to discriminate against interstate commerce in marijuana. *Ne. Patients Grp.*, 45 F.4th at 549–50, 553. To answer that question, the Court looked to the Rohrabacher-Farr Amendments, and not merely the CSA, because "the CSA was not Congress's last word on the market in marijuana." *Id.* at 549. While the CSA aimed

to eliminate all commerce in marijuana, the Rohrabacher-Farr Amendments reflect a very different intent: "Congress has taken affirmative steps to thwart efforts by federal law enforcement to shut down that very market, through the annual enactment of the Rohrabacher-Farr Amendment." *Id.* at 553. This Court therefore refused to hold that Congress intended for there to be no commerce in marijuana left for states to regulate, *id.* at 549–50, an intention central to *Raich*'s ruling, *see* 545 U.S. at 19.

If the Rohrabacher-Farr Amendments are necessary to understanding Congress's intent for *Dormant Commerce Clause* purposes, then those amendments are also necessary for assessing Congress's intent for *Commerce Clause* purposes. By taking action "to free the market in medical marijuana from being subject to the full degree of federal criminal enforcement," *Ne. Patients Grp.*, 45 F.4th at 555, Congress has eliminated the comprehensive ban that defined the CSA in 2005.[1] Unlike in 2005, the current regime now "contemplates both that an interstate market

---

[1] Defendant notes that the Rohrabacher-Farr Amendments do not apply in Idaho, Kansas, or Nebraska; however, that is merely because those states have no medical marijuana programs. *See State Medical Cannabis Laws*, NCSL (Jul. 12, 2024), https://www.ncsl.org/health/state-medical-cannabis-laws. The Rohrabacher-Farr Amendments apply in every state and territory with medical marijuana regardless of how those jurisdictions regulate medical marijuana. *See, e.g.*, Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, § 531, 136 Stat. 49, 150–51 (2022).

in medical marijuana may exist that is free from federal criminal enforcement and that, if so, this interstate market may be subject to state regulation." *Id.* at 549.

Defendant attempts to dismiss the relevance of the Rohrabacher-Farr Amendments by insisting that they apply only to medical marijuana, but this argument overlooks the fundamental changes that those amendments have made to Congress's regulation of marijuana. Where Congress in *Raich* sought to control all traffic in marijuana, illicit and legitimate, Congress now contemplates that the most widely available form of marijuana—medical marijuana—will be "*subject only* to state regulation." *Id.* at 553 (emphasis added). (Despite Defendant's recognition of the relevance of Rohrabacher-Farr to medical marijuana, Defendant continues to assert that even intrastate medical marijuana can be federally criminalized.)

The Rohrabacher-Farr Amendments also show that Congress has abandoned certain of its findings in the CSA concerning marijuana generally, findings that were critical in *Raich*. In the original CSA, Congress had found, "Controlled substances manufactured and distributed intrastate *cannot be differentiated* from controlled substances manufactured and distributed interstate. Thus, *it is not feasible to distinguish*, in terms of controls, between controlled substances manufactured and distributed interstate and controlled substances manufactured and distributed intrastate." *Raich*, 545 U.S. at 12 n.20 (quoting 21 U.S.C. § 801(5)). *Raich* cited this finding to explain why "enforcement difficulties" rendered the intrastate ban

14

necessary. *Id.* at 22 (citing 21 U.S.C. § 801(5)). This finding, however, did not survive the Rohrabacher-Farr Amendment, which expressly *differentiates,* and requires the DOJ to *distinguish*, between state-regulated intrastate medical marijuana and interstate marijuana.

Because the post-*Raich* legislation "specifically mandates that the" DOJ do what the CSA says is impossible (distinguish between local and interstate marijuana), the Rohrabacher-Farr Amendments are "irreconcilable" with Congress's prior finding in the CSA that local and interstate marijuana are indistinguishable. *Everytown for Gun Safety Support Fund v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 984 F.3d 30, 42 n.8 (2d Cir. 2020). The Rohrabacher-Farr Amendments are thus the type of appropriations act that constitutes an "implied repeal" of prior legislation. *Id.* (holding that appropriations act that forbade agency from disclosing data impliedly repealed the Freedom of Information Act as it applied to that data).

The Rohrabacher-Farr Amendments have also displaced the CSA's findings about the necessity of controlling intrastate marijuana. Congress previously found in the CSA, "Federal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic,'' *Raich*, 545 U.S. at 12 n.20 (quoting 21 U.S.C. § 801(6)), leading to *Raich*'s conclusion that "failure to regulate the intrastate manufacture and possession of

marijuana would leave a gaping hole in the CSA," *id.* at 22.  Today, this finding too is "irreconcilable" with the Rohrabacher-Farr Amendments, *Everytown*, 984 F.3d at 42 n.8, which provide that state-regulated medical marijuana will be "subject only to state regulation," *Ne. Patients Grp.*, 45 F.4th at 553.  While Defendant asserts, without explanation, that Congress still "believes that prohibiting state-regulated marijuana is an 'essential part of the larger regulatory scheme," Appellee Br. 24 (quoting App. Br. 33), the Rohrabacher-Farr Amendments demonstrate otherwise. By repeatedly enacting legislation that leaves state-regulated medical marijuana subject only to state enforcement, Congress has necessarily determined that controlling state-regulated marijuana is not essential to achieving Congress's interstate goals.

The Rohrabacher-Farr Amendments represent a significant change from the *Raich*-era regime for yet another reason: as explained in Plaintiffs' opening brief, the amendments have made marijuana the *only* controlled substance for which medical use is determined at the state level, rather than the federal level.  For every other controlled substance, the determination of whether the substance can be used for medical purposes is delegated to the Secretary of Health and Human Services and the Attorney General.  21 U.S.C. § 811.  As *Raich* explained, "the CSA is a comprehensive regulatory regime specifically designed to regulate which controlled substances can be utilized for medicinal purposes, and in what manner."  545 U.S.

16

at 27.  Not so for marijuana today, however.  Despite marijuana currently being placed on Schedule I—a schedule that does not permit medical use—the Rohrabacher-Farr Amendments bar the Department of Justice from prosecuting participants in medical marijuana programs.

The amendments also mean that, even if marijuana is moved to a different schedule, the Department of Justice will remain barred from enforcing those schedule-specific regulations against state-regulated medical marijuana activities. For every controlled substance with a medical use recognized under federal law— the substances in Schedules II through V—the "CSA requires manufacturers, physicians, pharmacies, and other handlers of controlled substances to comply with statutory and regulatory provisions mandating registration with the DEA, compliance with specific production quotas, security controls to guard against diversion, recordkeeping and reporting obligations, and prescription requirements." *Raich*, 545 U.S. at 27.  Not so for marijuana: because those controls go "beyond what is required" under state law, *id.*, the Rohrabacher-Farr Amendments bar the Department of Justice from enforcing them against persons following "State Medical Marijuana Laws," *McIntosh*, 833 F.3d at 1177.  (This fact also belies Defendant's claim that ruling in Plaintiffs' favor would prevent the DOJ from applying Schedule III controls to medical marijuana.  Congress is already preventing the DOJ from

17

enforcing Schedule III controls—and indeed any controls—against state-regulated medical marijuana.)

In short, Rohrabacher-Farr changed the "overall statutory scheme for marijuana regulation," *id.* at 1176, such that the scheme before the Court is not the same scheme that *Raich* assessed. Because they are not the same, and because the current regime "was not directly at issue" in *Raich*, *Acosta*, 502 F.3d at 60, *Raich* "cannot be considered a 'direct' precedent" that would control the outcome in this case, *Southerland*, 466 F.3d at 1085.

Defendant's citations on *stare decisis* are not to the contrary: they involved cases where, unlike here, a Supreme Court precedent did directly control. In *Frese v. Formella*, for example, this Court explained, "Frese concedes that *Garrison* forecloses his First Amendment claim," and thus there was no question as to whether that Supreme Court case controlled. 53 F.4th 1, 6 (1st Cir. 2022) (citing *Garrison v. Louisiana*, 379 U.S. 64 (1964)).

In *Nat'l Coal. for Men v. Selective Serv. Sys.*, the Fifth Circuit considered whether the Supreme Court's 1981 decision upholding the male-only draft directly controlled a similar challenge four decades later. 969 F.3d 546, 547–48 (5th Cir. 2020) (citing *Rostker v. Goldberg*, 453 U.S. 57 (1981)). In the intervening years, Congress had kept the Selective Service regime the same; the only cited changes were that Congress had "repealed the statutory bans on women serving on combat

aircraft and ships" and the Department of Defense had opted to "open all remaining combat positions to women." *Id.* at 548. While these developments were legal in nature, they affected legal regimes *separate* from the Selective Service regime; the Fifth Circuit therefore treated the changes as insufficient to call into question whether *Rostker* "directly controls." *Id.* at 550 (quotations omitted).

Here, by contrast, Congress has revised the specific statutory scheme governing marijuana, not simply some ancillary regime as in *Nat'l Coalition*. Therefore, this case is akin to the Fifth Circuit's decision in *Bruno*, which refused to conclude that a prior Supreme Court holding was a "direct precedent" because it did not involve the "precise question" regarding the same legislation at issue in *Bruno*. 487 F.3d at 306.[2]

## II.    The District Court Impermissibly Extended *Raich* to a Regime Where Congress's Marijuana Regulation Is Not Comprehensive and Where Regulating Interstate Marijuana Is Not Necessary.

Because neither *Raich* nor any other case "directly controls" the outcome here, this Court must conduct its own "analysis to determine whether we would reach the same outcome" as *Raich*. *Bais*, 798 F.3d at 50. Here, reaching the "same outcome,"

---

[2] This Court is of course not bound by *Nat'l Coalition* and its conclusion that the advent of women in combat positions was insufficient to distinguish *Rostker*. In a separate case addressing the same issue, the district court concluded that *Rostker* did not control. *Kyle-Labell v. Selective Serv. Sys.*, 364 F. Supp. 3d 394, 416 (D.N.J. 2019).

*id.*, as the District Court did, would mean "extending" *Raich* to circumstances that *Raich* never contemplated, *Jefferson Cnty.*, 210 F.3d at 1320. Specifically, it would mean extending *Raich* to permit Congress to regulate intrastate marijuana activities, even where (1) Congress's statutory scheme is not comprehensively regulating marijuana; (2) Congress has concluded that intrastate and interstate marijuana are distinguishable; and (3) Congress has abandoned its prior finding that federal control of state-regulated marijuana was essential to regulating marijuana in interstate commerce. *See* I.B.2, *supra*.

Neither *Raich*, nor the Constitution, permits such an extension. Extending *Raich* to regulate intrastate marijuana where not necessary to protect a comprehensive interstate regime would mean that Congress could regulate intrastate marijuana, regardless of whether the Necessary and Proper Clause is satisfied. The District Court opinion demonstrates that risk. Instead of analyzing Congress's current statutory regime under the Necessary and Proper Clause, the District Court concluded that Congress could prohibit state-regulated marijuana because Plaintiffs, for example, "consume utilities" and "recruit and train employees," regardless of whether those activities have anything to do with the Congress's interstate marijuana goals. ADD13. Plaintiffs explained in their brief, and Defendant does not deny, that upholding the CSA's ban on those grounds, which have nothing to do with protecting congressional regulation of interstate commerce, cannot be permitted

20

under the Necessary and Proper Clause.  *See Artis v. D.C.*, 583 U.S. 71, 90 (2018) (quoting *Jinks v. Richland Cnty., S.C.*, 538 U.S. 456, 464 (2003)); App. Br. 10, 40.

Defendant therefore does not attempt to justify the District Court's reasoning and instead poses a different argument: that under *Raich*, Congress can regulate Plaintiffs' intrastate activities merely because Plaintiffs are transacting in a "commodity" for which there is a "national market."  Appellee Br. 14–15 (quoting *Raich*, 545 U.S. at 19).  *Raich*, however did not hold that Congress could regulate commodities in intrastate commerce merely because they are commodities.  *Raich* held that Congress can regulate "purely intrastate activity" "if it concludes that failure to regulate that class of activity *would undercut the regulation of the interstate market* in that commodity."  545 U.S. at 18 (emphasis added).

*Raich* therefore established that Congress's power to control intrastate marijuana must be assessed against the specific "regulation of the interstate market" that those intrastate controls are intended to serve.  *Id.*  For the CSA's regulation of state-regulated intrastate marijuana to be Necessary and Proper, those intrastate activities must "affect adversely the Congressional regulation" of marijuana in intrastate commerce.  *United States v. Wrightwood Dairy Co.*, 315 U.S. 110, 121 (1942).  Only then can it be said that the intrastate activities "in a substantial way interfere with or obstruct the exercise of the granted power" such that Congress can

regulate those activities. *United States v. Lopez*, 514 U.S. 549, 556 (1995) (quoting *Wrightwood Dairy Co.*, 315 U.S. at 119).[3]

Unlike in *Raich*'s time, it cannot be said today that the "subdivided class of activities"—state-regulated marijuana activities—is "an essential part of the larger regulatory scheme," nor that there are any applicable "enforcement difficulties that attend distinguishing between marijuana cultivated locally and marijuana grown elsewhere." 545 U.S. at 22, 26–27.  While the Rohrabacher-Farr Amendments apply only to medical marijuana, they undermine Congress's authority to ban both medical *and* adult-use marijuana.

As explained above, the Rohrabacher-Farr Amendments permit persons to participate in state-regulated medical marijuana programs without risk of federal prosecution.  Because state-regulated medical marijuana, per the Rohrabacher-Farr Amendments, is distinguishable from interstate (and illicit intrastate) marijuana, there is no basis for assuming that state-regulated adult-use marijuana is

---

[3] Defendant further misreads *Raich* by somehow insisting that even if *Raich* had been decided the other way, Plaintiffs' challenge would fail.  Defendant's hypothetical is irrelevant, because the legislative regime today is not the same one as in *Raich*.  To the extent Defendant is arguing that only non-commercial activities are entitled to the protections of the "affecting commerce" test, the Supreme Court long ago foreclosed that view.  *United States v. Robertson*, 514 U.S. 669, 671 (1995) (explaining that the "affecting commerce" test applies to "purely *intra*state commercial activities that nonetheless have substantial *inter*state effects").

indistinguishable.  The distinguishing feature—the production and distribution of that marijuana pursuant to state law—applies to adult-use marijuana as much as it does to medical marijuana.

Likewise, if controlling state-regulated medical marijuana is not, per the Rohrabacher-Farr Amendments, essential to Congress's statutory scheme, then there is no reason to conclude that state-regulated adult-use marijuana is essential to that scheme.  The Complaint establishes that state-regulated medical marijuana is available much more widely than state-regulated adult-use marijuana.  A34 (Compl. ¶ 55).  Because Congress has concluded that the more-widespread activity (medical marijuana) does not substantially interfere with Congress's regulations, then the less-widespread activity (adult-use marijuana) cannot be deemed to substantially interfere either.

Put differently, a scheme is either comprehensive or it is not.  Just as Congress's alcohol regime is "not a 'comprehensive' scheme of regulation because there are many aspects of the alcohol industry that Congress has left untouched," Congress's marijuana regime today leaves many aspects of the industry untouched. *Hobby Distillers Ass'n v. Alcohol & Tobacco Tax & Trade Bureau*, 2024 WL 3357841, at *15 (N.D. Tex. July 10, 2024).  It is therefore "not the *comprehensive* kind that justifies Congressional regulation of local behavior, like in *Wickard* and

23

*Raich*." *Id.* (emphasis in original). That lack of comprehensiveness precludes Congress's ability to ban both medical and adult-use marijuana.

Instead of rebutting this point, Defendant raises a strawman argument that the states, by regulating marijuana, cannot deprive the federal government of power. That is not Plaintiffs' argument. Plaintiffs' argument is that Congress has deprived *itself* of justification by abandoning its comprehensive regulation of marijuana and abandoning its prior conclusions that state-regulated marijuana was indistinguishable from, and essential to controlling, interstate marijuana.

Notably, Defendant makes no argument for how federal control of state-regulated marijuana is essential to the current statutory scheme. Defendant argued to the District Court that the current regime had the policy goals of "*curtailing* the marijuana trade" and to prevent "tourists from out of state" from visiting states with marijuana programs. Reply in Support of Mot. to Dismiss, *Canna Provisions, Inc.*, ECF 38 at 1, 10 (Apr. 5, 2024). As Defendant now seems to assert, neither of those speculative goals are consistent with the Rohrabacher-Farr Amendments, which imposes no limit on state-regulated medical marijuana, and which permits, as this Court previously noted, a Maine program that "affirmatively encourages out-of-staters to participate in the medical marijuana market as customers." *Ne. Patients Grp.*, 45 F.4th at 547.

In short, the Rohrabacher-Farr Amendments have dispensed with the notion that Congress is controlling state-regulated marijuana in service of interstate regulation. Where, as here, a regulation of intrastate activity cannot be justified under the Necessary and Proper Clause, those regulations are "merely acts of usurpation which deserve to be treated as such." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 559 (2012) (Roberts, *C.J.*, concurring) (citation omitted).

For the above reasons, the Rohrabacher-Farr Amendments, standing alone, require reversal of the District Court's decision. Plaintiffs have also pleaded additional facts further demonstrating that today's regime cannot satisfy the Necessary and Proper Clause. These allegations are relevant because Congress's updated regime "must be justified by current needs." *Shelby Cnty., Ala. v. Holder*, 570 U.S. 529, 536 (2013) (holding updated version of Section 5 of the Voting Rights Act unconstitutional, even though prior versions were upheld). Plaintiffs have alleged specific facts showing that state-regulated marijuana (a) substantially reduces interstate marijuana traffic and (b) is readily distinguishable from interstate marijuana. App. Br. 34–35. These facts preclude any assumption that banning state-regulated marijuana is essential to the CSA's regulation of interstate marijuana. Because the current regime no longer satisfies the *Raich* test, it was error for the District Court to make a "mechanical application" of *Raich*'s outcome to these new circumstances. *Riley*, 573 U.S. at 386.

**III.     Plaintiffs Plausibly Alleged a Fifth Amendment Claim.**

The District Court decision must be reversed for the independent reason that Plaintiffs have plausibly alleged a Fifth Amendment claim based on the centuries of Anglo-American legal tradition that both protected and encouraged commerce in the marijuana plant.  App. Br. 46–56.  The District Court should not have dismissed Plaintiffs' Fifth Amendment claim and instead should have provided the opportunity to develop a record on those legal traditions.  Defendant raises three arguments in response, none of which justify the District Court's dismissal.

*First*, Defendant argues that if states such as Massachusetts can regulate marijuana, then the CSA's blanket ban must be permissible too.  *Id.*  This argument is based on a false equivalence between the CSA's outright *ban* and the state laws that *permit* marijuana, subject to health and safety rules.  Appellee Br. at 29–30.  There is nothing "novel," *id.*, about differentiating regulations by their severity, a practice followed at every level of due process scrutiny.  Even rights subject to the strictest scrutiny can be infringed if "the infringement is narrowly tailored to serve a compelling state interest."  *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997).  Here, the CSA's ban cannot be considered narrowly tailored, regardless of whether the more-limited state regimes could be deemed sufficiently narrow.  *See* Opp'n to Mot. to Dismiss, *Canna Provisions, Inc.*, ECF 36 at 25 (Mar. 15, 2024) ("While

states may sometimes regulate those activities when appropriate for the public health, the federal ban fails under such scrutiny.").

Immediately below that scrutiny, this Court has recognized the "line of Supreme Court authority that identifies a protected liberty interest and then applies a standard of review that lies between strict scrutiny and rational basis." *Cook v. Gates*, 528 F.3d 42, 55–56 (1st Cir. 2008). Per this standard, "not every law which makes a right more difficult to exercise is, *ipso facto*, an infringement of that right." *Id.* (citation omitted). The CSA does not merely make marijuana activities "more difficult," *id.*, it criminalizes them, and thus fails under this scrutiny too, even if the state regimes might survive it. Indeed, even under rational basis scrutiny, Congress's arbitrary half-in, half-out regime, App. Br. 36, is a far cry from the comprehensive marijuana regulations in Massachusetts and other states. (For these reasons too, Defendant is incorrect to argue that ruling for Plaintiffs would mean all marijuana regulations, including the Schedule III regulations Defendant is contemplating, must satisfy "strict scrutiny." Appellee Br. at 34.)

*Second*, Defendant objects that "almost all of plaintiffs' arguments concerning the history of growing hemp and promoting hemp industry are equally applicable, if not even more relevant, to the history of tobacco farming in the United States." Appellee Br. 34–35. Defendant's argument elides, again, the crucial distinction between regulation and an outright ban. The federal government has historically

27

regulated tobacco, and there have been bans on certain *types* of tobacco *products*, but a decision by the federal government to ban the cultivation, distribution, and possession of *the tobacco plant*, subject to severe criminal penalties (as the CSA does for marijuana) would be met with searching constitutional scrutiny. Indeed, the closest the federal government came to such a ban was when the Food and Drug Administration first attempted to regulate tobacco. The Supreme Court vacated those regulations under the major questions doctrine, noting that "tobacco constitutes one of the greatest basic industries of the United States." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp*., 529 U.S. 120, 137 (2000). At a minimum, the Court could not conclude, based on the well-pleaded allegations of the Complaint, to reject Plaintiffs' Fifth Amendment arguments.

*Third*, Defendant argues that "the lack of regulation" of marijuana historically is "insufficient to demonstrate a fundamental right." Appellee Br. 33. This argument overlooks the ample evidence of laws both protecting the cultivation of marijuana (including the Magna Carta, App. Br. 52–55) and promoting commerce in marijuana (including both English and colonial-era laws, App. Br. 49–51, 55); *see also Laws of the State of Delaware*, vol. 1, ch. CCXXV.a., § 3 (1797), https://babel.hathitrust.org/cgi/pt?id=nyp.33433009080114&seq=551&q1=hemp.

In any event, this Court has confirmed that it is "mistaken" to assume, as Defendant does, that "the only history relevant to the substantive due process inquiry

is a history demonstrating affirmative government action to protect the right in question"—rather, protected rights can also arise where "there was no established history of government protection for the right," and where "laws restricting [the right] are of recent vintage." *Cook*, 528 F.3d at 53–54. Here the centuries-old legal traditions both protecting and permitting the right, coupled with the recent history of widespread recognition, demonstrate that Plaintiffs have plausibly alleged a fundamental right. Again, at a minimum, Defendant's argument impermissibly ignores the well-pleaded allegations of the Complaint.

## CONCLUSION

The order of the District Court dismissing the Complaint should be reversed.

Dated: October 31, 2024   Respectfully submitted,

      */s/ David Boies*
      David Boies
      BOIES SCHILLER FLEXNER LLP
      333 Main Street
      Armonk, NY 10504
      (914) 749-8200
      dboies@bsfllp.com

      Jonathan D. Schiller
      Matthew L. Schwartz
      David P.G. Barillari
      BOIES SCHILLER FLEXNER LLP
      55 Hudson Yards
      New York, NY 10001
      (212) 446-2300
      jschiller@bsfllp.com
      mlschwartz@bsfllp.com
      dbarillari@bsfllp.com

29

Joshua I. Schiller
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street
41st Floor
San Francisco, CA 94104
(415) 293-6899
jischiller@bsfllp.com

Thomas Lesser
Michael Aleo
Lesser, Newman, Aleo & Nasser LLP
39 Main Street, Suite 1
Northampton, MA  01060
Telephone:  (413) 584-7331
Facsimile:   (413) 586-7076
lesser@LNN-law.com
aleo@LNN-law.com

*Attorneys for Plaintiffs-Appellants Canna Provisions, Inc., Gyasi Sellers, Wiseacre Farm, Inc., and Verano Holdings Corp.*

## <u>CERTIFICATE OF COMPLIANCE</u>

Undersigned counsel certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because it contains 6,498 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

Undersigned counsel certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of the Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced 14-point Times New Roman typeface using Microsoft Word 2010.

Dated: October 31, 2024

*/s/ David Boies*
David Boies

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system on October 31, 2024.

I certify that all participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.


Dated:  October 31, 2024

                                        */s/ David Boies*
                                        David Boies